(C. D. 363)

AMERICAN EXPRESS CO. v. UNITED STATES

United States Customs Court, Second Division

(Decided June 28, 1940)

*Eugene R. Pickrell* (*Eugene A. Chase* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges.

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced as "Ados Apparatus." Duty was levied thereon at the rate of $4.50 plus 65 per centum ad valorem under paragraph 368(a) (1) and (2) of the Tariff Act of 1930 as a clockwork mechanism of the kind and value therein made dutiable at those rates. It is claimed that said article is properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as a machine not specially provided for.

The plaintiff offered in evidence a diagram of the imported device, which was admitted in evidence as Illustrative Exhibit A, and the testimony of a single witness, Willy Schmidt, assistant plant manager of the importing corporation and a well-qualified chemist and physicist. He testified that the apparatus at bar was similar to and identical with

the merchandise which was the subject of the decision in the case of *Agfa Ansco Corp.* v. *United States*, T. D. 45432, 61 Treas. Dec. 205, the record in which case was incorporated in and made part of the present record; that the apparatus in question is used to analyze the vapors which occur in manufacturing units to determine the oxygen content and that its operation is continuous.  He further testified:

Q. Why is it necessary to analyze the oxygen content of those vapors?—A. It is necessary to avoid the hazard of an explosion.  The vapors are inflammable. When they are mixed with air, they form explosive mixtures, and if the amount of oxygen can be kept below a certain limit the vapors can be kept nonexplosive.

Q. Will you please explain in detail how this apparatus operates, marking any of the parts on Illustrative Exhibit A to which you refer?—A. The apparatus is connected with a line which continuously supplies representative samples of the vapors present in the machine.  The vapors are purified and thereby made free from solvents so that only the inert gas, chiefly nitrogen, in this machine, and any possible quantity of oxygen will enter the apparatus.  Another part of the apparatus is connected with a water line.  Through the flow of water, a system of pipettes and siphons is operated.  A certain vessel fills up with water and as it fills up it closes and gathers all vapors into a sealed vessel as the water rises.

Q. Pardon me, Doctor.  Will you mark on that diagram, Illustrative Exhibit A, where the gas is drawn into the instrument?—A. The gas is drawn in through here.

Q. Mark that with an "A".  [The witness so marks the exhibit referred to.]

Q. How is it drawn into the instrument?—A. By positive pressure in the machine.  The machine has slight pressure causing the water to run continuously. The line of water ends at a pipette.  The water enters a vessel of a definite volume which has a tube on the upper end from which the gas can be forced out.  The gas runs through continuously, and as the water rises, when it reaches a certain level, it draws the gas into a pipette.

Q. Will you mark that pipette "B"?  (The witness so marks Illustrative Exhibit A.)

The WITNESS.  The continuous water pressure forces the gas volume between these two points.  Shall I mark them "C" and "D"?

Mr. CHASE.  Yes.

(The witness so marks Illustrative Exhibit A.)

The WITNESS.  The gas is forced between those points into an absorption vessel. This absorption vessel is filled with phosphorous, and of course, with water.

By Mr. CHASE.

Q. Will you mark the absorption vessel "E"?

(The witness so marks Illustrative Exhibit A.)

The WITNESS.  In the absorption vessel the oxygen is absorbed by phosphorous and the original measured volume is reduced by the amount of oxygen which has been absorbed.  A floating sphere——

By Mr. CHASE.

Q. Will you mark that sphere with the letter "F"  (The witness so marks Illustrative Exhibit A.)

The WITNESS.  A floating sphere is connected by a lever arrangement with a pen.  This pen moves over a chart or a strip of paper which is graduated, and if a large amount of oxygen has been absorbed the float will not rise as high as if only a small amount has been absorbed.  By this rise of the sphere we can determine the amount of oxygen which has been absorbed from that which was originally present in the vapors.  Through the continuous running of the water,

another siphon is gradually filled and as it reaches a certain point it siphons the analyzed mixture out and permits another sample to come in. This is automatic; it is all run through the continuous flow of the water. The sample is measured. It is siphoned into the absorption vessel and the floating sphere shows the amount of oxygen absorbed. The analyzed sample is siphoned out and a new sample is forced into the apparatus.

From this record it would appear that the only part of the apparatus at bar which could be considered to have any resemblance to a clockwork mechanism is the device which moves forward the chart or strip of paper on which the analyses are recorded.

While under the Tariff Act of 1922 this apparatus might have been classified under paragraph 368 of that act, nevertheless, since it is not in itself a clockwork mechanism, it may not be held to be within the scope of paragraph 368 of the Tariff Act of 1930. For instance, in the case of *United States* v. *Cambridge Instrument Co.*, 21 C. C. P. A. 508, T. D. 46970, certain accelerometers, although they contained drums driven by clockwork mechanisms upon which a record was made, were nevertheless held to be classifiable as machines not specially provided for under paragraph 372 of the 1930 act, rather than under paragraph 368 thereof.

Also, in *Selsi Co., Inc.* v. *United States*, T. D. 49235, 72 Treas. Dec. 525, a certain barograph containing a clockwork mechanism and a cylinder or drum which recorded atmospheric pressure for a period of a week, was held dutiable under paragraph 372 of the Tariff Act of 1930 as a machine not specially provided for, rather than under paragraph 368 of the same act.

In the still later case of *Selsi Co., Inc.* v. *United States*, C. D. 16, 1 Cust. Ct. 59, in holding similar barographs to be properly dutiable under paragraph 372 rather than under paragraph 368 of the 1930 act, we said:

In his brief filed herein counsel for the Government cites as an example the case of an alarm clock, a time switch, or a time vault, as being analogous to the barographs in the instant case. However, in our opinion the cited instances are not analogous. In all three articles named the mechanisms are set for a certain specific predetermined time, and at that precise time the mechanisms function for the purpose for which they were constructed. But in the case of a barograph the mechanism is not set for any particular predetermined time. Its function is continuous. It records atmospheric pressure during the entire period it is in operation. In that respect it is more analogous to a watch which functions continuously from the time it starts until it stops. In other words, the alarm clock, the time switch, and the time vault perform a particular function at a predetermined time as contemplated by said paragraph 368; whereas the barograph performs a particular function but not at a predetermined time but during the entire period of its operation.

It is evident that the Ados apparatus at bar, not being a clockwork mechanism, and not performing a particular function at a predetermined time, but operating continuously, is not within the scope of

paragraph 368 of the Tariff Act of 1930, the other provisions of said paragraph being obviously inapplicable.

Although we have thus gone into the matter somewhat at length, we are satisfied that the decision of this court in the incorporated case of *Agfa Ansco Corp.* v. *United States, supra,* is here applicable and therefore controlling.

Hence, we hold as a matter of law that the Ados apparatus constituting the imported merchandise at bar is properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as a machine not specially provided for, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claim is overruled. Judgment will be rendered accordingly.